Price C. McLEMORE, Plaintiff,

v.

SOUTHERN IMPLEMENT MANUFAC-
TURING COMPANY, Incorporated
and George Partin, Defendants.

No. DC6316.

United States District Court
N. D. Mississippi,
Delta Division.

March 6, 1964.

Talbot, Sullivan & Dunbar, Clarksdale, Miss., and Hugh P. Carter, Birmingham, Ala., for plaintiff.

Breland & Whitten, Sumner, Miss., and Ooms, McDougall & Hersh, Chicago, Ill., for defendant.

CLAYTON, District Judge.

This suit was brought by Price C. McLemore, a citizen of Montgomery, Alabama, against the Southern Implement Manufacturing Company, Incorporated, a Mississippi corporation (hereinafter

called SIMCO) and George Partin, its President, under the patent laws of the United States for infringement of United States Letters Patent No. 2,408,328 and No. 2,487.353 (hereinafter referred to as the '328 and '353 patents respectively), both of which relate to the flame cultivation of crops. Plaintiff initially sought a temporary injunction against SIMCO and Partin, and after a submission to the court on memorandum briefs and affidavits by the parties, this court granted the prayer for temporary relief on June 13, 1963. Motion to dissolve this injunction was filed and submitted on memorandum briefs and affidavits. This motion was overruled on October 7, 1963. Subsequently plaintiff added Quality Steel Corporation of Cleveland, Mississippi, as a party defendant, but during the trial, this defendant was dismissed by the court, with stipulation therefor by plaintiff.

After a full hearing, submission was on briefs of the parties. Upon consideration of all the evidence and the briefs, the following findings are made.

1) Plaintiff is the owner of the '328 and the '353 patents issued on September 24, 1946, and November 8, 1949, respectively. His ownership is subject only to an exclusive license thereunder to Flame Cultivation, Incorporated, a New York corporation.

2) Patent '328 discloses apparatus which consists essentially of a vehicle having ground engaging wheels, at least a pair of burners connected to the vehicle for travel therewith, together with fuel supply means for the burners carried by the vehicle. The burners are disposed upon opposite sides of a vertical plane which extends in the direction of movement of the vehicle and the burners are directed diagonally downwardly in a direction substantially crosswise of the vehicle for causing the flame to strike the surface of the ground short of the line of intersection of the vertical plane and the ground. The burners and fuel supply means cooperate to cause each burner to project a relatively long otherwise unconfined flame which is spread by impingement against the ground to form a laterally widened sheet of flame of shallow depth which flows along the ground and floods across the line of intersection of the said plane and the ground whereby not only the weeds to be killed are bathed in flame, *but the crops growing therein also are bathed in flame*. The patent teaches that it is possible, by regulating the flame and the speed of the vehicle, to flame both the weeds and the crops in such manner that the weeds are killed whereas the growing crops are not harmed.

3) Patent '353 relates to specific apparatus for similar flame cultivation of crops. It covers essentially a flame cultivator attachment adapted for mounting on a vehicle to travel along the plant rows. The flame cultivator attachment comprises a transversely extending draft bar and a plurality of burner rigs including a plurality of skids separately supporting the burner rigs and pivotally connected with the draft bar so as to be individually capable of rising and falling movement relative thereto. This patent also discloses means interconnected with the draft bar for rocking the same, together with lifter means which are actuated by such rocking movement to lift the skids and burner rigs to inoperative positions.

4) The court finds that patent '353 thus is an improvement patent over '328 in the sense that the details of the apparatus shown in the '353 patent are different from and more advanced than those shown in the '328 patent. From the testimony it appears that the '353 apparatus is adapted for attachment to and detachment from a tractor or the like and that the burner rigs pivotally mounted to the draft bar together with the skids pivoted thereto at the opposite ends readily permit the burner rigs to shift laterally, thus to remain in correct position relative to the row crops as the machine travels down the rows.

5) The flame cultivating apparatus forming the subject of the two patents in suit has been and is being commercialized by Gotcher Engineering & Manufac-

turing Company of Clarksdale, Mississippi, and by Arkansas Foundry Company of Little Rock, Arkansas, both of whom are sub-licensees from plaintiff's exclusive licensee, Flame Cultivation, Incorporated. The testimony reflects that altogether, including the two sub-licensees just named, as well as some previous licensees, about 25,000 of these apparatuses have been produced and sold to the trade.

6) During the trial of the case, defendant did not seriously dispute that claims 1, 3, 4, 6, 7, 8, 9 and 11 of patent '328 and claims 11, 13, 14, 16 and 17 of patent '353 were infringed by the machines manufactured and sold by them. The court finds from the evidence that these claims read element-for-element and function-for-function, upon the accused flame cultivators.

7) Defendants do contend, however, that the patents in suit are invalid since (a) the subject matter is a result of double patenting; (b) the subject matter was known and in public use or sale prior to the date of the patent application (Title 35 United States Code, § 102); (c) the prior art was such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art (Title 35 United States Code, § 103), and they counterclaim under Title 28 United States Code, §§ 2201 and 2202 for a declaratory judgment adjudging patents '328 and '353 to be void as a matter of law and therefore not infringed by any product of defendants.

8) Before determining the issue of double patenting, it is proper to review the status of the prior art of the subject matter. Application of Russell, (1956), 239 F.2d 387, 44 CCPA 716. The defendant Partin testified that he bought some sort of weed burning device from John Douglas in Pittsburgh, Pennsylvania, sometime between 1928 and 1930. Further, that in 1930 he offered this device for sale in the farming regions of Mississippi and specifically at the fairgrounds in Senatobia, Mississippi, but met with no success because of the ready availability of cheap farm labor in the area. Evidence of this early Douglas machine was offered by a simple line drawing allegedly made in 1928 or 1929. Defendants also offered J. A. Finklea, who testified that Partin came to him with this machine in Leland, Mississippi, and he agreed to build two more machines for Partin, using the Douglas machine as a model. Partin took delivery of only one of these machines and Finklea kept the other. Finklea testified that he built another ten or fifteen such machines for farmers in his vicinity, but did not begin producing them in large numbers until the 1940's when labor became scarce. However, it is important to note with reference to the last Finklea machines that they were made after the McLemore machine was at the nearby Stoneville Experiment Station. Still further, Mr. Gault, a disinterested witness, testified that he knew of his own knowledge that Mr. Finklea did not manufacture any flame cultivators until after World War II. This testimony is substantiated by the testimony of Mr. Robertson, who testified, contrary to Mr. Finklea's statement, that the Hebron farm on which Mr. Finklea said he placed flame cultivators, had none until 1944 or 1945, most likely 1945. The testimony of the witness Gotcher, who the night before the trial inspected the machines on the Hebron farm, substantiates this.

9) One of the settled principles of law relating to proof of prior knowledge or use of a prior unpatented device is clearly set forth by the Court of Appeals of this circuit in Inglett & Company, Inc. v. Everglades Fertilizer Company, Inc., 255 F.2d 342, (5 Cir., 1958), where the Court said:

"The second question (2), the time Arcady operations began, was equally uncertain especially when tested as it must be in the light of the principle that where an unpatented device, the existence and use of which are proved only by oral testimony, is asserted as an anticipation of the patent, *the proof sustaining it must be clear, satisfactory and, by some it is said beyond a*

*reasonable doubt,* Hoeltke v. C. M. Kemp Manufacturing Co., 4 Cir. [1935], 80 F.2d 912 [26 USPQ 114 and 28 USPQ 176]; Zachos v. Sherwin-Williams Co., 5 Cir. [1949], 177 F.2d 762, 763 [83 USPQ 408]; Walker on Patents, Deller's Ed., § 63, pp. 300–309." (Emphasis added.)

This rule has its origin in the early Supreme Court case of Coffin v. Ogden, 18 Wall. 120, 124, 21 L.Ed. 821 (1873). Subsequent to that time and in the case of The Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Beat Em All Barbed Wire Co.), 143 U.S. 275, 284, 285, 12 S. Ct. 443, 447, 36 L.Ed. 154 (1892), the Court affirmed this rule and stated as follows:

"Thus far we have considered, as bearing upon the state of the art, devices, the character, construction and scope of which were exactly defined in the specifications and drawings of actual patents, the only question presented being the proper interpretation of such patents, and the bounds they had set to the ingenuity of succeeding inventors. We have now to deal with certain unpatented devices, claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but *have required that the proof shall be clear, satisfactory and beyond a reasonable doubt.* Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very

fact, which courts as well as the public have not failed to recognize, *that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny.*" (Emphasis added.)

10) It is apparent and the court finds that this machine obtained by the defendant Partin did not reach the sophistication of the patented McLemore machine. At most it was but a glimmer of light short of the threshold of effective flame cultivation of growing crops. From all of the testimony offered by defendants in order to show prior public knowledge, use and sale of the claimed apparatus, the court finds as a fact that this testimony is not sufficient either by way of corroboration or in detail to warrant a belief that the apparatuses claimed in the patents in suit were known, used or sold by others in this country prior to the invention thereof by the plaintiff.

11) The plaintiff, McLemore, experimented with flame cultivation apparatus over a period of time starting in about 1936 until just prior to the end of World War II, when finally his apparatus was developed into a practical, proven and efficient machine.

12) The defendant, Partin, in about 1945, commenced the manufacture and sale of flame cultivators which apparently constituted infringements upon the patents here in suit. Upon being notified of this infringement by attorneys for plaintiff, Partin ceased infringing said patents and shortly after that closed down his business which at that time was individually owned by him and was also known as Southern Implement Manufacturing Company.

13) The weight of the evidence leads the court to find that defendants copied the commercial form of plaintiff's licensee's flame cultivators, with only minor and inconsequential variations.

14) Another aspect of the defense of anticipation is, as defendants say, that the invention claimed by the patents in suit was either patented or described in a printed publication in this or a foreign country, before the invention thereof by McLemore. No publication was offered nor did defendants serve notice of any publication as is required by Title 35 United States Code, § 282. They did, however, serve notice that they relied upon the following patents as affecting the validity of the patents in suit:

| | | |
|---|---|---|
| Smith | 753,926 | March 8, 1904 |
| Iten | 899,404 | Sept. 22, 1908 |
| Russell | 1,223,115 | April 17, 1917 |
| Servoss | 1,399,229 | December 6, 1921 |
| Graham, et al | 1,663,249 | March 20, 1928 |
| Benjamin | 1,755,806 | April 22, 1930 |
| Kang | 2,301,213 | November 10, 1942 |

Plaintiff's own patents, Re. 22,803, October 15, 1946, and Re. 22,836, January 28, 1947.

———◆———

15) Laying aside for the moment plaintiff's two reissue patents, all of the defense cited patents are appropriate prior art against the '353 patent, and all but the Kang No. 2,301,213 are appropriate for consideration against the '328 patent since it is entitled to a filing date of October 11, 1939, more than a year prior to the filing date of Kang. During the trial the principal patents relied upon by the defendants were Iten, Benjamin and Kang.

16) From the testimony in the case the court concludes, as was admitted by defendants' patent expert that none of the patents relied upon anticipate any of the asserted claims of the patents in suit. The Iten patent does not have the basic concept of throwing the flames across the rows inasmuch as Iten specifically provides shields *which prevent the flames from ever contacting any of the growing crops*. Further, Iten does not have the details of construction, including the pivoted burner rigs, skids, and the like, as claimed in the '353 patent. The Benjamin patent has a forward tool bar which is mechanically attached to the steering mechanism of the tractor in such manner that it moves to the right or left as the operator turns the steering wheel. The Kang patent is a spray device with a runner adapted to contact the tops of plants growing in a row, thus to hold the spray nozzles in correct position to spray material down onto the plants.

17) In addition to what has already been said as to the general defense of anticipation, it should be sufficient to say that neither the Douglas-Partin-Finklea machine nor any of the disclosures made by the defense cited patents contain all of the elements, or their mechanical equivalents in the same description, method or device combined in substantially the same way to produce substantially the same results as that accomplished by the disclosures of the plaintiff's patents in suit here. All this is required for a successful defense bottomed on anticipation. 69 C.J.S. Patents § 21, p. 199 and cases cited to Note 64.

18) The plaintiff's reissue patents as set forth in paragraph 14) cannot be prior art against patent '328 since the '328 patent is entitled to a filing date of October 11, 1939, some years ahead of either of the reissue patents. The two reissue patents are prior art against the '353 patent, however.

19) The court finds that the disclosures of the reissue patents do not anticipate any of the claims in suit of the '353 patent because:

a) Re. 22,803 does not disclose the claimed burner and skid arrangement together with the pivotal connection of the burner rigs to the draft bar; nor,

b) Lifter means actuated by rocking movement of the draft bar for lifting any skids supported burner rigs to inoperative position.

c) Re. 22,836 does not anticipate the '353 patent because the means to raise the burner mechanism to inoperative position consists of an overhead mechanism, as distinguished from a rotary draft bar; and

d) Since there is no rotary draft bar of the kind set forth in the '353 patent, the overall combination is not found in the Re. 22,836 patent.

20) It is also apparent that plaintiff's inventions as disclosed by the two patents in suit are advanced and complicated to such an extent that they were not and could not have been obvious to a person having ordinary skill in the art with which we are here concerned. The fact that they filled a great need of substantially long duration in agriculture lends weight to this finding. From what has been said, it follows that each defense under Title 35 United States Code, §§ 102 and 103 must fail.

21) The defendants have insisted that the claims of the patents in suit are void because of double patenting, saying that the claims of plaintiff's reissue patents Re. 22,803 and Re. 22,836 cover the same inventions as do the claims in suit. Since, as has been stated, patent '328 is entitled to a filing date ahead of the effective dates of either of said reissue patents, the defense of double patenting as to the '328 patent cannot be predicated upon the claims of said reissue patents.

22) Double patenting of patent '353 against the reissue patents was the subject of examination and cross-examination of defendants' patent lawyer expert. He was presented with prepared comparative claim charts and it appeared that no single claim of either of the reissue patents is identically worded with either claim in suit of patent '353. Therefore, United States Letters Patent '328 and '353 as to claims 1, 3, 4, 6, 7, 8, 9 and 11 of said patent '328 and as to claims 11, 13, 14, 16 and 17 of said patent '353, here in suit, are valid as against the claim of double patenting.

23) Accordingly, defendants' counterclaim for a declaratory judgment declaring patents '328 and '353 void will be denied.

24) The court finds that defendants, Southern Implement Manufacturing Company, Incorporated and George Partin, have infringed the aforesaid claims of the patents in suit by making and selling apparatus for the flame cultivation of crops embodying the claimed features of both of said patents either by direct infringement thereof, by inducing others to infringe the same, or by contributing to the infringement of the aforesaid claims of both of said patents.

25) Since the '328 patent expired after suit was filed but before trial, plaintiff is not entitled to a permanent injunction with respect to that patent. Accordingly, the preliminary injunction with respect to the '328 patent will be dissolved as of the expiration date of that patent, but plaintiff is entitled to damages for its infringement up to the expiration date. And, plaintiff is entitled to an injunction against the defendants, Southern Implement Manufacturing Company, Incorporated and George Partin, separately and severally, enjoining them, separately and severally, against further infringement, direct or contributory, of claims 11, 13, 14, 16 and 17 of patent '353.

26) Plaintiff is entitled to an accounting of damages for infringement of the '328 and '353 patents, pending which and under the authority of E–I–M Co. v. Philadelphia Gear Works, (5 Cir. 1955), 223 F.2d 36, the court will with-

278

hold a determination as to whether the infringement has been wilful and deliberate and whether a punitive award is justified under Title 35 United States Code, § 284. The court will also withhold determination of the question of an allowance of attorneys fees under Title 35 United States Code, § 285. Jurisdiction as to both matters will be specifically reserved.

Order is being entered in accordance with this opinion.